Good morning. Please be seated. This is the matter of case number 07-2885, people v. Lawrence Smith. And the same cast of characters, just different faces. I wonder if the state's attorney and the appellate defender would step up. But no clack today for you folks. Step up and tell us who you are. Those who are going to argue. Good morning, your honors. My name is Jessica Diane Hammond on behalf of the office of the state appellate defender. You better speak a little louder. Jessica Payment? Yes, Jessica Payment. Payment. As I age, people's voices tend to be softer. And it's actually the higher pitched voices, too, as you get older. I represent the appellate, Mr. Terrence Smith. Good morning, Ms. Payment. And you are? I'm Assistant State's Attorney Tasha Rae Kelly on behalf of the people. And if there are any questions regarding the second issue, they'll be addressed by my colleague, Assistant State's Attorney Brian Coley. The second issue being the constitutionality of the fine statute. Thank you. Okay, thanks. You're basically, as I understand it, unless I read too much subtlety in what you were saying, you were basically laying that one down just to re-argue it again, to argue it again to the Supreme Court. You weren't really expecting much out of us. They have not ruled yet, though, have they? No. Have they? I can answer. It hasn't been raised. I thought it was on PLA. It isn't? Okay. I got it. I got it mixed up with another fine issue, I guess. They've now specifically claimed that on PLA. I didn't know that. Okay. You can start anytime you like. Thank you. May it please the Court, I would like to address the first issue in the brief. And I should tell you, I can hear you. Just barely. Okay, I'll speak up. I'm sorry. Can you maybe try and adjust the mic a little bit? It doesn't amplify. It just records. Okay, I'll speak up. I'm sorry. That's better. Better. This appeal is on, I'm sorry, this case is on appeal from the summary dismissal of Mr. Terrence Smith, pro se post conviction petition. On January 20, 2002, during a shootout amongst a crowd of 150 people, Officer Weber shot Mr. Smith in the back. Officer Weber claimed that he shot Mr. Smith because he saw Mr. Smith shooting a gun. But it was Terrence Smith's defense theory at trial that Officer Weber's allegations were part of a police cover-up, that he fabricated the story to justify his own actions. It was also the defense's theory that this cover-up was born out of the roundtable discussion that happened right after the shooting amongst various police officials. Defense counsel apprised the trial court that this was its defense theory. I think you're leaving out a few gaps here, unless you're going to go back and retrace your steps. What you're leaving out here is the fact that, number one, the officer who was supposed to shoot him in the back testified that he was shooting, that the defendant was shooting a gun, I believe he had two guns is what his testimony was, that he was shot in the back in an alley, that when he was shot, the defendant pushed one of his guns away from him, that it was a 9mm weapon. That's what this officer testified to, the officer whom you want us to discount. So let's discount him for a moment in terms of his own testimony. In corroboration for his testimony, there was first testimony by Hopkins that a man in a light color, he didn't know his face, and Weber testified this guy was wearing a white coat, was running in the alley, that he saw him. Other testimony in the alley was that he found 9mm bullets, casings, in the alley, where Officer Weber said the defendant was when he was shot. Then they took and found powder burns on the defendant's clothing, consistent with where they would have been if he were in fact discharging a weapon. So you had that in evidence, and now the defendant says that there was a roundtable, which is common to all cases involving shootings by policemen, through some sort of peer review I suppose, which the defendant wanted to open up to the contents of what was said on the basis that it would further show the direction of the investigation, which was the reason asserted by the defense at the trial for its inquiry into the conversations of this roundtable. At that point, I'll toss the ball back to you to correct anything that I said, and or continue with what you want to narrate from here on in. Okay, just to correct a few things, Officer Weber said that he saw my client with one gun, not two. Okay, somebody said two, didn't they? Somebody said two guns. One of the other witnesses. But one gun is... And the forensic evidence doesn't really corroborate Weber's testimony. Weber said he saw Mr. Smith shooting on Michigan Avenue, and then when he tried to shoot in the alley, that Mr. Smith's gun jammed and locked. But there were no casings from the 9mm gun found on Michigan Avenue. But they were found in the alley. Where Officer Weber says he did not shoot his gun. So they're in opposite places from Weber's testimony. And then there was a gun powder. Right, on his clothing, like you said. Powder. Right, but all that said was that his hands could have been in the area of... How far in the area and how far not? How far do you have to be in the area to show this kind of gun powder? Well, I mean, the results... You know, let's not say area. Would it have to be within the city of Chicago? Or would it have to be within the range of his wrist? Well, I mean, it says that he may have discharged a weapon. He may not have. How else would there be gun powder if a weapon was not discharged? What alternative explanation is there? By touching someone who has gun powder on their hands or touching something that has gun powder on it, there are many ways to transfer the gun powder. Is there any indication from which we are to presume that possibility in evidence? Is it a fair inference, you think, to assume that if you find the gun powder there, where it would have been if he shot the weapon, that he shot the weapon? I mean, that's... Do you think you would need more? Definitely. How much more would you need? Well, if you look at the facts as a whole, Officer Weber is the only eyewitness that saw, that claims to have saw Mr. Smith shooting a gun. There's 150 people out there. The state can present one witness to say that Mr. Smith is shooting the gun, and this is the only witness who has something to... Now you're betraying the case. Your key to the door... The gate. Your key to the lock... The gate to the second stage is to show that the appellate attorney was ineffective for failing to raise an issue which would reopen the door for the kind of facts you're talking about. Now you cite in your brief two colloquies that occur between the trial attorney and the court. And you've got a good case out there in Mayfield for the position that hearsay and an erroneous ruling on hearsay can't form the basis for a PC if you can establish that the error was clear on its face and that the appellate lawyer overlooked it and was so ineffective. Okay? What I'm asking you is how do you tease out of this colloquy enough information to label the appellate lawyer as ineffective? First of all, with respect to the Dunigan colloquy that you cite in your brief, the trial lawyer said anything said or done at the roundtable that affected the course of the investigation. The response to that from the trial judge was, it's all hearsay. Just the way the trial lawyer framed his desire to get into the roundtable discussion for whatever purpose, okay, had to leave the appellate lawyer reading this cold record with a question as to where was he going? Where am I going? Why didn't the trial lawyer make an offer of proof, which he could have very easily done, and said, judge, this is where I'm going, which would really then be ineffective of trial counsel for failing to preserve his record properly. Because as I read these two colloquies that occurred, it seems to me that you are really putting an enormous burden on the appellate lawyer to tease out, out of this colloquy between the trial judge and the trial defense attorney, enough information to make an appellate argument. I was looking at it and I was saying, how would I do it, other than to raise some general notion about, well, the trial judge was wrong to call this hearsay, when in fact it was the trial attorney who was really ineffective in presenting his argument to the trial judge in the first place. Do you understand why that is? Because if his reason that he gives for wanting to open up the conversation at the round table is to see what the effect is on the investigation, the door is closed by the same rule that opens it up. You can try to show impact on investigation, but not by getting the specifics of conversations, of statements. You can say, for example, in the best case for it, that there was a round table discussion after which he testified, or after which he wrote his report stating that the defendant there was firing a gun. That's as far as you can go. You can't go into specific conversations. The irony of all of this is that you may have still had an argument for ineffective assistance of appellate counsel if the appellate counsel had framed the issue as one of the trial attorney failing to make an offer of proof with respect to the argument. At that point, he would have transformed the conversations of the round table into verbal acts because they would be directions of what he should do rather than statements of fact furthering the course of the investigation. Well, Your Honor, there are plenty of cases that say that instructions are not hearsay. By nature of an instruction, it is neither true nor false. My point is, how does the appellate lawyer looking at this cold record tease out of it enough to make a credible argument on appeal? Because the defendant's right to explore this issue was infringed upon. The defendant has a constitutional right to present his theory of defense and to be able to present the facts to prove that. Counsel, if I might interrupt you. I think we have to also keep something else in mind here. You do have the Dunn-Ivan case and the Gilmore case that seems to say that you should not restrict the opportunity of cross-examination without necessarily knowing what that cross-examination is going to lead to. But does that apply to ineffective assistance of counsel? That may very well apply to a direct appeal based on the exclusion of this evidence. But in order to show that counsel is ineffective for failing to raise it, you do have to show prejudice because Strickland will still apply with both prongs. You first have to show that it was an error not to do it, which you may or may not be able to do here. But then afterwards, you have to show that it would have made a difference in the case. Now, where can he show that this roundtable discussion would have led to this kind of conspiratorial scenario? And where would he show that the course of that conversation affected the outcome of the case? Well, Your Honor, you're absolutely right. We don't know what these officers would have said. So how do you prove the second Strickland prong here to show prejudice if all you can do is speculate as to what the roundtable would have shown? And if you've heard me on that, I'll add to it. Because that's why I went into the facts with you at the outset. And shouldn't the Court be able to consider in deciding whether there's any prejudice the strength of the evidence that established the commission of the crime independently in evaluating whether the roundtable actually had a shot, a reasonable shot in the exposure of the conversation to show that they all sat around and conspired with this guy on a cover-up? Well, Your Honor, that was the defendant's whole theory of his defense, is that they conspired at the roundtable. He can scratch this out of thin air even if that's what he wanted. He can't scratch it out of thin air. He has to show some basis for assuming that the roundtable actually went in that direction as opposed to simply speculating, particularly in the light of strong evidence that he was toting a gun, that the roundtable was there to assist him, conspiratorially, so to speak, in avoiding the consequences, into dodging the bullet. Two things. The prejudice is in the denial of the right to explore. This was his defense theory. He was denied the right to even explore. But he has to show prejudice. If you're going to put it on an ineffective assistance of counsel basis, you have to satisfy Strickland, and Strickland has two problems, the first being that there be an error, the second that there be an impact on the outcome of the case. And how could you establish that there would have been an impact on the outcome of the case by imagining that this roundtable was a conspiracy? You have another problem, too, it seems to me, when you allege ineffective assistance of appellate counsel. Okay. Aside from devouring your own. I hope nobody told you this would be easy. That's my turn to talk. An appellate lawyer is a lawyer under oath, as you know. You're bound by the record that's tendered to you. You can't make things up. You can't speculate. You're bound by the record in front of you, the cold record. But you're given a wide amount of discretion as to what arguments you can make. Very liberal construction as to what arguments you can make. Also, very liberal construction as to what arguments you can choose to ignore. Now, in this particular case, to hang your hat on those two colloquies, between the trial judge and the trial attorney, strikes me as, well, let me put it this way. The appellate lawyer who wrote the original brief doesn't have an opportunity to come in and defend. That's another irony of this kind of situation, where you're finding ineffective assistance of appellate counsel. The appellate lawyer who drafted the original direct appeal is being, in a sense, victimized by your decision, second-guessing that attorney as to which arguments carried the most weight. You have another wrinkle in this case, and that is that the appellate court allowed Mr. Smith to file a supplemental brief, where he could raise any argument he wanted to raise. Nobody raised the issue that you're now raising. Now, presumably, if Mr. Smith were a good jailhouse lawyer, he would have seen the argument, because presumably he didn't file a supplemental brief until after he had read the brief prepared for him by the appellate lawyer. Just so you know, I don't think we're telling you that because he filed a pro se supplemental brief that he can't claim ineffective assistance of appellate counsel. No, I'm not saying that. We're not saying that. But the irony of it is that he had an opportunity. The state says that, but we don't say that. If he were traversing the record on his own behalf, to raise that issue himself, because he had the liberty of looking at the appellate brief before it was filed. In a sense, what I'm suggesting to you here is that there is an element of the defendant in this particular case recombing the record for arguments that probably could have been made but were not made, particularly the failure of the trial attorney to make an offer of proof, which I've never known any criminal judge to deny in a felony case. If an offer of proof is made, normally the good trial judge will say, I'll give you an opportunity to make your offer of proof. Just keep it brief. And that request was never made in this case. Your Honor, in this case there was no need to make an offer of proof. The trial attorney told the judge on several occasions what testimony he was trying to elicit. He said, I'm trying to get institutions. But how do you know that he would elicit it? He said he wanted to elicit this testimony. Let's assume that that's what he said. We have problems with that. Because that's not really what we read him as saying. But let's assume that that's what he said. But how does he prove that he would get what he set out to do? Well, Your Honor, we can assume. Detective Romick was the defense's witness. When you say we can assume, you mean the appellate lawyer who prepared the direct appeal brief could assume. Right. And then we have to be clear. Hodges-Standard says that this ineffective assistance of appellate counsel argument just has to be arguable. It just has to be not. Well, that's what Sturdivant and Gilmore seem to say, except that's why I introduced to you the notion that there's a difference here between our case and those cases, because in those cases, the omission by or the preclusion by the trial court was being directly appealed as error of the court. Here it's appealed as ineffective assistance of counsel. In appealing it in a direct appeal to the court, the court made error, there is some basis in these cases to say that the opportunity to cross-examine is enough for whatever you have to demonstrate. But if you're arguing it through the vehicle of ineffective assistance of counsel, it's not enough, because to show ineffective assistance of counsel, you have to show not simply the deprivation of the opportunity, but you have to show that it would prejudice the outcome. One other point, and then I'll shut up. It seems to me that the appellate lawyer in this case who was reviewing this transcript originally had also to face the problem of the fact that the two colloquies occurred in the ward where Dunnegan, the Dunnegan colloquy occurred, followed by the Romick colloquy. Now, you have to read that Romick colloquy in context that what had occurred, the trial judge had already heard the lawyer's, quite frankly, inept attempt to get into the roundtable based on Dunnegan. And when he got to Romick, the trial judge had had enough of it and cut him off. Now, those are the best arguments you've got for the trial judge committing an error. Yeah. The best argument you've got is the Romick, it is the trial judge colloquy where every objection was sustained before he could even get into it. But he'd already listened to him on the other one. It was the trial court who told defense counsel that he would have to bring in these witnesses. Defense counsel does exactly what he says, and the judge still erroneously is told that all of this. Yeah, but he didn't ask to bring in what the witness said. He asked the witness what other people at the roundtable said. Yeah. Right, but that would not. When the judge says bring in the witnesses, it means take the hearsay element out of this. If you want to know what was said, if there were five people there who said things, bring all five in, have them testify to what they said. But not that you can bring one in to testify as to what everyone else did. That hearsay is not cured. Yes, it is if it's an instruction. An instruction is not. But he didn't use that as an instruction. He used it as the explanation. We don't know what these witnesses would have said because the trial court cut it off. The trial court, this was a bench trial. There was no jury to taint. He could have very well let them testify and then decide is this admissible, is it not. But he cut it off. But he could very well have demanded that the trial attorney representing the defendant approach the whole issue of opening up areas of evidence properly. And if he's cutting him off, all the trial attorney has to do is to ask for an opportunity to make an offer of proof. He never did. I'd argue that this argument is still under Hodges. It is arguable. It is not fanciful. It is not delusional. It has an arguable basis in law and in fact. And Hodges reaffirms that the standard is very, very low for petitioners on the first stage of summary dismissal. I think that's your best argument. It is the first stage. I'd like to touch on the second part of argument one about the Brady violation that Mr. Smith alleged. This is another instance where the claim was not delusional. It had an arguable basis in law and in fact. We have to take. I showed a newspaper report of a subsequent E2 incident that was photographed. I don't. But one of the questions raised with regard to those photographs is whether they were interior or exterior. And the other questions raised are, first of all, what would they have shown here? Would they have shown culpability? Or since all of these events took place on Michigan Avenue, as you point out, rather than in those directions that the camera and the published surveillance photographs were directed, which evidently were interior. Third, was the state aware, just because there was a newspaper article later on with regard to another incident, is this sufficient to establish awareness by the state that there was, in fact, something that was material to your defense which they were withholding? So you have a lot of obstacles here. You have germs of good ideas. But the question is, are they fleshed out enough to get some result for the defendant? Okay. First of all, I'd like to say Hodges tells us that just because a claim may be unlikely, just because a fact may be unlikely is not enough to justify summarily dismissing it. That's what Hodges said. And this claim is, it's not unlikely that there were cameras there. The clippings show that they had cameras. Well, how much speculation does the court have to tolerate under Hodges? Under GIST quite a bit. Right. Well, Hodges goes a step further and says that the GIST standard is just talking about the pleadings. The Supreme Court has made it clear that it's deliberately set like that. The substantive claim, the standard for evaluating that is if it has no arguable basis in law and in facts. And this claim does. We have to take his facts alleged as true. He says that there were videos of the shooting. But he doesn't satisfy Collins' affidavit requirements, does he? Yes, he does. He has his own, but that's not enough. His own affidavit? Yeah, doesn't he have his own affidavit? He has the sworn verification. He has newspaper articles, but then he jumps from newspaper articles to the argument that it was intentionally withheld as part of a conspiracy to frame him. That's a pretty big leap, isn't it? Well, Your Honor, we have to take it. How much does it take? We can flesh that out at the evidentiary hearing. That's what they're for. But at this point, we have to accept that it's true. He substantiated the claim with the newspaper clippings that suggest very strongly that those tapes exist. And, I mean, this is something that we don't have to accept as true, unfounded speculation. Does he offer anything in his affidavit with respect to support his argument that, A, the state had possession of the tape or even knew about it? Does he make any kind of a connection? I don't think he alleges anything. He just alleges that the tapes were available, and then he jumps to the conclusion. And that's a pretty big leap. He's jumped over a rather deep crevice by arguing that, A, the state had it and they suppressed it because it was favorable to the defendant. Well, that's the claim that he makes. That's the claim that we have to accept as true. And the newspaper clippings do suggest that the tapes were in place, that the videos were in place. Do they show videos in place on Michigan Boulevard? The very same club. Yes, the very same club, but where is the surveillance camera directed? Does this club front on Michigan Boulevard? The newspaper clippings say that there were cameras inside and outside the club. My question is not that. Well, the club is on Michigan. So if the cameras are outside the club, then... Well, the camera in the newspaper wasn't on Michigan, was it? The newspaper article says that there were cameras inside and outside. That's what he's supporting his claim with, something that's showing that these cameras were there. And he's saying that the state knew about them. And he says also in his affidavit, these claims that I'm putting forth, I've done the research. They are not just, you know, out of the air. I've looked into this. I've looked at documents. And that's his affidavit. That's the best he can do. And that's what I just said, is that this threshold has to be low. People are incarcerated, don't have legal degrees and things of that nature. He couldn't get the tapes. He explained that. But he did the best that he could to support these claims. And that's enough to satisfy... So you think it's enough? How long after this event did the event that was reported in the newspaper occur? That was the following year. So the question, I suppose, is, among others, whether the leap or the inference that the surveillance camera was operating a year later, that it was operating during the course of this occurrence, and two, that the state knew about it. Well, the state knew about them in the subsequent litigation against the club owners. And that's what the article showed, that the state used the tapes then to prosecute someone when they needed the tapes. And, I mean, again, here, Haja says the claim, if it's unlikely, that's not determinative here. We determine that on an evidentiary hearing. Give them a chance to flesh it out. Either the tapes exist or they don't. Either they exonerate them or they don't. That's what the hearing is for. All I'm saying is at this stage, summarily dismissing the petition was not in accordance with Haja. Okay. I'd like to say thank you. We'll give you an opportunity to respond after the state has responded to you. Thank you. Thank you. Thank you, Ms. Pena. Ms. Kelly. Why don't you address, if you don't mind, I hope I'm not just wreaking havoc with your organized plan of attack here, but I would like to see what you might have to say on the last point, the Brady point, as raised by counsel. Why shouldn't this go to stage two on the Brady claim? Well, while it is correct that we are at first stage and that the standard that we're looking at is a gist of a constitutional claim, it's also correct that in proceeding forward on a Brady claim, there's essentially three different elements that the defendant has to show. And certainly in order to be successful in presenting the gist of a claim, the defendant would have to at least present one of the three. And in this case, the defendant hasn't presented enough information in his petition to satisfy any of the three. Isn't there a likelihood that there was a tape and that the state would be aware of the tape, if not in possession of it, based on the newspaper article, which would be a sufficient corroboration on an evidentiary basis to satisfy what Collins is looking for? Well, the newspaper article was published in 2007. The trial in this case took place in 2004. So certainly the fact that there's a newspaper article which explains that there were video cameras present in 2003 would not show that in 2004, when this case went to trial, that the people would have been aware of those. Well, is the case reported in the newspaper an earlier case? The E2 case that was the subject of the 2007 articles, that took place in 2003. So wouldn't that pretty much put the state under sufficient likelihood of awareness, as well as possession, to invoke the Edwards standard for Stage 1 versus Stage 2? Wouldn't it have to go to Stage 2? Well, the defendants presented no evidence of when the state became aware of the videotapes. But if it was aware in 2003, how much of a leap is there to extend that awareness to 2004? Well, we don't know that the state was aware in 2003. We know that the incident at the E2 nightclub... Well, what did the newspaper article report that surveillance tape in connection with being shown at trial? In 2007, correct. So at least, let's put it this way. In 2007, the state was aware of a tape that existed in 2003. It doesn't button down the date that it discovered the possession of the tape. But wouldn't that, shouldn't that be sufficient to impose a further inquiry under Edwards for a 2000, for a Stage 2 development, if not Stage 3? No, because it doesn't demonstrate that a videotape existed in 2003 when this incident took place. Well, there would have to be a tape existing in 2003 for it to be shown in 2007. The only question is, where did it exist and what was the state of, and was the state, and when did the state first become aware of it? But the fact that there's a camera present outside the nightclub in 2003 doesn't show that there was a camera present in 2002 when this shooting took place. It also doesn't show that the cameras would be positioned in such a way that it would show any evidence of this shooting or actions by this defendant. It doesn't demonstrate that anything portrayed on that videotape would be exculpatory to the defendant. And it certainly absolutely doesn't show that the people were either aware of the cameras outside of the nightclub or that they willfully withheld those videotapes or... But there is that assertion in the petition and in the defendant's affidavit. So the question really shifts to whether that newspaper clipping suffices to complement the pro se affidavit sufficiently to satisfy Collins. But you're talking about an affidavit which essentially states everything that I've written in my post-conviction petition is true. Completely unsupported, speculative statements... Well, the question is whether that newspaper article is as tenuous as it may be. Is sufficient support to move this to stage two? Prior to the GIST standard, we would have said this is a fishing expedition council. But after the GIST standard was articulated, is it still a fishing expedition? It still is. There's absolutely no support for the statement that's being made. And this is the definition of... In Hodges, they talked about a fanciful factual allegation. This is the definition of this. The defendant has speculated that these cameras, if they even existed in 2003, would demonstrate something which would prove contrary to the testimony that was given by Officer Weber. And he offers absolutely nothing to show that these videotapes existed, that they would, in fact, portray what he claims that they would portray, and that they were ever in the possession of the people or that the people were aware of them. Why don't you proceed with where you intended to go before I rudely interrupted you? No problem. I briefly was hoping to address the first issue which was raised in regards to... Isn't it pretty clear that the trial judge abruptly cut off the defense attorney in this case out of whatever motive, irritation, desire to get on with it, a feeling or at least an attitude by the trial judge that the trial attorney was on a fishing expedition himself with respect to the round table, and that he should have at least permitted a preliminary inquiry with respect to the circumstances surrounding it where a good, able, nimble defense attorney could have gotten around the hearsay problems that he faced in examining state witnesses on the issue? For example, the classic one would have simply been as a result of the round table discussions, did you do anything? It's as simple as that, which I think is pretty clear from at least part of the colloquy. That was what the defense counsel was trying to do. Well, certainly in regards to the colloquy, the second colloquy during Detective Romick's testimony, it's possible to see that as the court being more abbreviated. However, certainly during the questioning of Officer Dunnigan, defense counsel was allowed to set forth his questions, and the trial court engaged defense counsel, listened to his proffered reasons for trying to- Classic question. And in this particular case, did you discuss the results of the round table with Officer Weber? Did you discuss the results with Weber? Simple question. State objection. Court sustained. Why? Well, it was set forth to the court that what- Don't you really have to go back to the colloquy between the defense attorney and the court on the Dunnigan question? Correct. It was set forth to the court what he was seeking to do, and at that point the court was fully aware of where defense counsel was attempting to go there. How could he be aware? Nobody knew the answer to that question. Did you discuss the results of the round table with Weber? Well, he was aware of the questions that he would be asking. The follow-up questions might wander into a hearsay issue. Correct, Your Honor. Well, yeah, but you have to wait, don't you, to see where he's going? Well, at that point the court was fully aware of what these questions were going to be and had already- And what if the second question had been, what if the answer to that question, did you discuss the results of the round table with Weber? The answer, yes. What if the next question were, as a result of that, did you make a visit to the Office of Professional Standards? Well, counsel didn't indicate that he was hoping to ask a question like that to the court. Actually, he said, did you advise Officer Weber as to how to prepare for this case at any point? Why is that your concern? Well, certainly, perhaps, although some of the exact questions that were asked by defense counsel may not have been hearsay, what we're looking at here is whether appellate counsel was ineffective for not raising an issue of the trial court airing and not allowing this testimony. So while, in fact, some of the statements and the exact questions that were asked may have been proper, we're looking at this under a larger framework, which is the ineffective assistance of counsel issue. All right, that's right. That should have been your answer in the first place. Could the appellate lawyer tease out of this an argument for a clear violation of the right to confront? Absolutely not. Well, if you say not without absolutely, it will go down a little easier. Then I change my answer to no. It's a close case, isn't it? It's not a close case in that the defendant can't show prejudice here because. . . We've got to climb into the mind of the appellate attorney who's traversed the entire record and decided which issues to raise and which issues to ignore. Particularly where the question is only a one of stage one versus stage two. Yeah. But we do have an appellate counsel who raised a number of issues in his direct appeal and in his best judgment chose to set forth those that were most meritorious. And we also have an issue here, as Your Honor mentioned earlier, of a defendant who was given the opportunity to file a supplemental brief. But this is a jailhouse lawyer brief, isn't it? He had the wherewithal to file 25 separate claims of error in that supplemental brief, Your Honor, including other confrontation clause issues, and he did not raise this one. So certainly that's something that should be taken into consideration. So once given the opportunity to file a supplemental brief, he has to take the consequences of the failure to raise issues that were raised or could have been raised. I'm going to throw this one to you, but again, this is a softball to you, but I would like to hear some comment about it from the defense. Could we consider the question of whether the incident, the roundtable, as defense attempted to deploy it was relatively bizarre in that it jarred one's intuitive sense of what takes place at a roundtable, that it's not a place where conspiracies are necessarily hatched. It's all intuitive. It's anecdotal. There is no statistic or whatever, but it seems to be relatively, if not completely, far afield. If that is the case, then strategy of counsel comes into play, whether he wants to emphasize more than he already did that possibility. So obviously you're going to tell him, of course it's bizarre, but again, I told you my purpose is to give the defense a chance to respond. It is. And as your honors pointed out earlier, a roundtable is a routine procedure that takes place whenever there is. Well, how much judicial notice can be taken of those facts? I believe that the court itself, in responding to the original questioning by defense counsel, did mention himself that a roundtable is a routine procedure. I believe that that fact was also testified to by either Detective Romick or Officer Dunnigan, who, when asked about a roundtable, mentioned during their testimony that it's a procedure which takes place every time there is a shooting by an officer. Supposing a response would have come in had he been allowed to ask the question. Well, they told him, unless you can't, if you fired on someone out of fear that he had a gun, we would have to take your badge from you. But if he had a weapon in his hand, then that would justify the shooting. Now, that's not conspiratorial, but it could be something that would impact on Weber's testimony. But certainly we have absolutely no indication that anything like that happened. And Officer Weber, in this case, did give sworn testimony that, in fact, that he saw this defendant with a gun in his hand shooting at least two people, and that he chased him in the alley and saw him attempt to shoot the gun again. So for those reasons and for those stated in the people's brief, we would ask that you affirm the local court's ruling in this case. Thank you. Thank you, Counsel. As payment, a final word. You do a nice tap dance on this one troublesome issue involving the supplementary brief filed by the defendant himself. In your response brief. Thank you. You say Smith, because he was represented by appellate counsel and was not a pro se defendant, he was entitled to be effective assistance whether he filed his own brief or not, in response to the state's argument that he could have raised the issue. In fact, he did raise an issue of ineffective trial counsel, but not with respect to the colloquies involving the round table, but for failure to investigate matters regarding the gun residue evidence. My question to you is, he could have raised the issue of ineffectiveness of trial counsel in not asking for an offer of proof or further pursuing the argument of hearsay and being blocked from an opportunity to confront. But he did not. Now, if he had been a lawyer, he would have been facing a race judicata argument, wouldn't he? Arguments that were raised or could have been raised. If he were a lawyer. He was allowed to file the supplemental brief. And the state suggests that he may have blown his opportunity for getting around the waiver issue with respect to the appellate lawyer he did have when he was given the opportunity to supplement the appellate lawyer's argument. I mean, how much role should we grant a pro se defendant? Or should we force him to live with his own traversal of the record? Why should he be excused from all of the other arcane rules that we've imposed on post-conviction petitions? We got a case out there that says anything about this? Do you? He has a case, good. It's not the best case in the world because it's not from Illinois. It's from the United States Supreme Court. That's not fair. You're going to answer the question. Among other things, you have a federal case, Harris v. Day at 226 Fed Third 361. You have Anders, 386 U.S. 738. Yeah, good old Anders. You have another federal case and a Florida case. All of which excuse these pro se defendants. I just wanted to find out. Are you familiar with them? Professional counsel, where is the jack? Yeah. No, I'm not familiar with the case. Okay, well, now you know. Thank you. I'd like to address a couple of things that the state's attorney said. And the question posed was, is this enough here to show that appellate counsel could tease out an issue here? And I'd say yes because of the fact that this was the defendant's entire defense. This was his entire defense, and it hinged on Weber's credibility. Weber was the only one who could say that my client shot the gun. So, yes, this was an issue worth raising, especially considering the fact that the only other issues he raised were miscorrections. No substantive relief was even in the mix with those issues. So, no, counsel did not, appellate counsel did not raise numerous issues, like the state's attorney has said. He just raised miscorrections. So this would have been worthwhile. Also, Your Honor, just to touch on the Brady claim, this is not like post-conviction petition that is not supported. This is the instance where you have the defendant doing what he believes he needs to do to satisfy the post-conviction act. He's attaching affidavits. He's finding evidence that would support his claims, newspaper articles and things of that nature. And I argue that this is enough to pass the first stage. Under Hodges, the claim is arguable. Both claims are arguable. Neither are fantastic nor delusional. Both have a basis in the law and a basis in the fact that he pleads, which must be taken as true. So if this Court has no further questions, I'd ask this Court to reverse this case for second stage proceedings. Thank you. Ms. Paynen, Ms. Kelly, the case was well-briefed and well-argued. It will be taken under advisement. Thank you.